**Alexander F. EAGLE, Plaintiff-Appellant,**

v.

**AMERICAN TELEPHONE AND TELEGRAPH COMPANY, a corporation, Defendant-Appellee.**

**No. 84–1636.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 13, 1984.

Aug. 19, 1985.

---

Samuel L. Holmes, Angell, Holmes & Lea, San Francisco, Cal., for plaintiff-appellant.

Gary L. Simms, Richard W. Odgers, Pillsbury, Madison & Sturo, San Francisco, Cal., for defendant-appellee.

Before CHOY, CANBY and NORRIS, Circuit Judges.

CANBY, Circuit Judge:

Pacific Telephone and Telegraph was ordered to refund $381 million in rate overcharges in 1980. That refund precipitated this lawsuit. Alexander F. Eagle filed a class action on behalf of Pacific's minority shareholders against Pacific's majority shareholder American Telephone and Telegraph (ATT), alleging that ATT breached its fiduciary duty owed to the minority shareholders. After the complaint was filed, ATT purchased the plaintiffs' shares in the merger of Pacific into ATT. The

case was removed from state court to the District Court for the Northern District of California, which granted judgment in favor of ATT. At issue on appeal are (1) whether the case was properly removed from state court; (2) whether, assuming jurisdiction, the $381 million refund injured the minority shareholders; and (3) whether a pretrial order precluded Eagle from alleging a new claim at the summary judgment stage.

We affirm. We conclude that this class action was properly removed from state court because the federal court had original diversity jurisdiction. The minority shareholders' claims can be aggregated to satisfy the jurisdictional amount because the shareholders' claims derive entirely from an alleged injury to the corporation. We affirm the district court's finding that Eagle and other minority shareholders were not damaged by the refund. We also hold that the district court did not abuse its discretion in enforcing the pretrial order.

## BACKGROUND

The minority shareholders seek relief for two alleged injuries. First, in 1980, the California Public Utilities Commission (CPUC) ordered Pacific to refund $381 million in rate overcharges to its ratepayers. Second, by 1981, Pacific had incurred a $1.5 billion tax liability that was on its books at the time of the ATT–Pacific merger. The minority shareholders contend that the refund and tax liability injured them by depressing the value of their Pacific stock.

The shareholders' allegations can only be understood in the context of a dispute in regulatory philosophy at the root of the refund and tax liability. In 1954, Congress enacted the accelerated depreciation tax provisions. A dispute arose over the appropriate treatment of accelerated depreciation for utility ratemaking. ATT and its subsidiaries advocated the use of normalization accounting. Under this method, the utility takes accelerated depreciation deductions and investment tax credits on its tax returns but only takes straight-line depreciation on its accounts used for ratemaking.

The increment of actual tax savings above the straight-line deduction reflected in the ratemaking account is placed in a reserve account that generates income for investment in the utility plant. This method of treatment is supported as being in accord with the intent of Congress in allowing accelerated depreciation; it makes the tax savings available for investment in plant and equipment.

Some state regulatory commissions, however, adopted the view that any tax savings resulting from accelerated depreciation should inure immediately to the benefit of the ratepayers. California was one of them, during much of the period relevant to this litigation. CPUC consequently took the position in 1960 that if a utility elected to use accelerated depreciation, then it must use a "flow-through" method of accounting for ratemaking purposes, which has the effect of passing the tax savings directly on to ratepayers.

The sparring among Congress, CPUC and similar state regulatory commissions, and Telephone companies like Pacific took a number of twists and turns. At the risk of oversimplification, only a few of them will be related here. Pacific initially refused to use accelerated depreciation (thereby losing some tax savings) because CPUC's policy would have required those savings to be passed on to ratepayers. (Pacific also asserted other reasons for preferring straight-line depreciation.) CPUC responded by ruling that it would set rates based on accelerated depreciation whether or not the telephone company elected it (thereby virtually forcing such an election whenever the company was free to make it). Congress in 1969 rejoined the battle by passing 26 U.S.C. § 167($l$), which precluded companies from taking accelerated depreciation if they were forced to pass the tax savings on to ratepayers. CPUC subsequently adopted a number of differing positions, some induced by state court decisions reversing its rulings. At one point it permitted Pacific to elect accelerated depreciation and to retain the tax savings, and at

another it required a flow-through, even retroactively.

There were two results of this protracted skirmishing that are relevant to this lawsuit. In 1974, CPUC permitted Pacific to retain tax savings from accelerated depreciation but, after a reversal in state court, it retroactively required a flow-through. It accordingly ordered a refund to ratepayers of $381 million ($418 million with interest). Pacific's former minority shareholders seek relief for that refund, arguing that management could somehow have avoided the loss if it had adopted accelerated depreciation from the beginning.

A second result was that, because of CPUC's ultimate position that tax savings had to be passed through, Pacific became ineligible for accelerated depreciation tax treatment under 26 U.S.C. § 167($l$). Accordingly, it accrued a federal tax liability of some $1.5 billion. That tax liability was still on Pacific's books when ATT, then a 90 percent shareholder of Pacific, proposed a stock-for-stock merger with Pacific in October of 1981.

In September 1981, Eagle had filed this class action in California state court on behalf of Pacific's minority shareholders similarly situated. The complaint alleged that ATT used its ability to control Pacific to its own advantage and to the minority shareholders' detriment. Specifically, the complaint alleged that ATT caused Pacific to forego taking accelerated depreciation and investment tax credits, that ATT's imprudent decision caused Pacific to refund $381 million in rate overcharges and that the refund injured the minority shareholders by approximately $38 million (ten percent of the total refund).

ATT removed the class action to federal court pursuant to 28 U.S.C. §§ 1332 and 1441. After unsuccessfully petitioning for remand to state court, Eagle filed an amended complaint. The allegations remained essentially the same. Eagle, however, amended the damage allegation to state that the refund caused approximately $3.00 per share depreciation in the value of each share owned by minority shareholders

and that Eagle individually was damaged by approximately $4,200. The complaint also alleged that after the initial complaint was filed, ATT offered to purchase the minority shares at a depressed price without compensating the minority shareholders for the damage caused by the refund. Eagle then filed a second motion for remand to state court that was denied.

In the meantime, Pacific and ATT filed for approval of the proposed stock-for-stock merger. CPUC held hearings at which Eagle and other minority shareholders appeared and contested the fairness of the proposed terms to the minority shareholders. Eagle argued that the proposed price for minority shares was inadequate because it did not reflect "pending federal legislation, which if enacted, would relieve (Pacific) of a substantial recorded tax liability," the $1.5 billion tax liability. CPUC, however, found that the exchange offer was "fair and reasonable" and that the approval of the merger would not adversely affect the interests of minority shareholders.

After the merger was complete, Congress enacted the Surface Transportation Assistance Act of 1982, Pub.Law No. 97–424, 96 Stat. 2097, which reduced the $1.5 billion tax liability to approximately $320 million. Eagle then attempted to bring the tax liability into the class action at the summary judgment stage. Eagle alleged that the $1.5 billion tax liability depressed the value of the Pacific's shares at the time of the merger and that ATT received a windfall from the tax relief after the merger was consummated.

On cross-motions for summary judgment, the district court ruled in favor of ATT. The court held that the $381 million refund did not damage the minority shareholders because if Pacific had adopted accelerated depreciation in 1968, Pacific would not have collected an offsetting amount in rates. The court also held that a pretrial order precluded Eagle from asserting for the first time at the summary judgment stage that the tax liability depressed the exchange price he received for Pacific's

shares in the ATT–Pacific merger. Alternatively, the court held that Eagle was collaterally estopped from making this claim by the CPUC finding that the exchange offer was fair to minority shareholders despite the possible tax forgiveness.

## DISCUSSION

### 1. Jurisdiction

■ Eagle contends that this class action[1] was improperly removed from state court because Eagle's claim and the claims of some of the other shareholders that he represents do not satisfy the jurisdictional amount. The district court has original diversity jurisdiction in all civil matters where the parties are of diverse citizenship and the matter in controversy exceeds $10,-000. 28 U.S.C. § 1332. The diversity of citizenship is not in issue. Jurisdiction in this case depends on the application of the aggregation rules used to determine the amount in controversy. The individual claims of the minority shareholders' can be aggregated if they share a common and undivided claim. If, however, their claims are separate and distinct, aggregation is not permitted and each plaintiff must exceed the $10,000 statutory minimum to maintain diversity jurisdiction. *Snyder v. Harris,* 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969). Because we view the claims as common and undivided, we hold that the amount in controversy is the aggregated claims of the plaintiffs or $38 million and that the jurisdictional amount is satisfied. Thus, removal to the district court was proper.

Our starting point for determining the amount in controversy is to characterize the shareholders' claims under California state law. *Horton v. Liberty Mutual Insurance Co.,* 367 U.S. 348, 352–53, 81 S.Ct. 1570, 1572–73, 6 L.Ed.2d 890 (1961). We confine our analysis to the claim as presented in Eagle's initial complaint because the amount in controversy is determined from the pleadings as they exist at the time a petition for removal is filed. *Pullman Co. v. Jenkins,* 305 U.S. 534, 537, 59 S.Ct. 347, 348, 83 L.Ed. 334 (1939). *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 292, 58 S.Ct. 586, 591, 82 L.Ed. 845 (1938).

■ Eagle's initial complaint asserts a cause of action for breach of the majority shareholder's fiduciary duty to minority shareholders. Under California law, the majority shareholder breaches his fiduciary duty if he uses his ability to control a corporation to his own benefit and to the detriment of the minority shareholders. *Smith v. Tele.-Communication, Inc.,* 134 Cal.App.3d 338, 343, 184 Cal.Rptr. 571, 574 (1982); *Jones v. H.F. Ahmanson & Co.,* 1 Cal.3d 93, 100, 81 Cal.Rptr. 592, 599, 460 P.2d 464, 471 (1969); 12B *Fletcher Cyclopedia Of The Law Of Private Corporations,* § 5811 (1984). Eagle's complaint alleges: that ATT, Pacific's majority shareholder, used its control of Pacific to elect directors that implemented ATT policy; that ATT policy caused Pacific imprudently to forego adopting accelerated depreciation and investment tax credits before the 1968 cutoff date; that this imprudent policy resulted in Pacific's being ordered to refund $381 million in rate overcharges; and that "the refund reduced or will reduce the assets of Pacific and the amounts otherwise available to pay as dividends to shareholders or to enhance the net worth of the underlying value of the shares owned by plaintiff and the class he represents." The complaint prays for compensatory damages of at least $38 million and punitive damages of $20 million.

■ Normally, a shareholder cannot maintain an action in his individual capacity against a majority shareholder for the depreciation in the value of his stock resulting from a depletion of corporate assets because the depletion of corporate assets is a direct injury to the corporation and only

**1.** Even though no class certification has yet been sought, we assume for purposes of determining whether the district court had jurisdiction that this suit is a class action. *City of Ingelwood v. City of Los Angeles,* 451 F.2d 948, 951 (9th Cir.1971).

an incidental injury to its shareholders. *O'Hare v. Marine Electric Co.*, 229 Cal. App.2d 33, 39 Cal.Rptr. 799, 800 (1964); 12B *Fletcher Cyclopedia Of The Law Of Private Corporations* § 5812 at 173 (1984). The majority shareholder's duty must be enforced either directly by the corporation or through a shareholders' derivative suit.[2] Eagle and the class that he represents, however, no longer own Pacific stock because of the ATT–Pacific merger and therefore cannot bring a derivative shareholders' suit on Pacific's behalf against ATT. Cal.Corp.Code § 800(b). *See Watson v. Button*, 235 F.2d 235, 236–37 (9th Cir. 1956). Because Pacific's recovery for its alleged injury would not compensate the former minority shareholders for any loss they may have suffered as a result of the injury to Pacific, we are willing to assume that California would permit Pacific's former minority shareholders to bring this class action in their individual capacities.

We must now determine whether the minority shareholders' claims are separate and distinct or common and undivided within the meaning of the aggregation rules of *Snyder v. Harris*, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969).[3] The dividing line is not clear. 14A C. Wright, A. Miller, E. Cooper *Federal Practice And Procedure* § 3704 (1985). Eagle contends that the shareholders' claims are separate and distinct because under California law the minority shareholders each have an individual cause of action even though they were injured by a single wrongful act. ATT, however, contends that the claims are common and undivided because the shareholders' claims derive from their common and undivided interest in Pacific's assets.

We have previously held that the character of the interest asserted depends on the source of plaintiffs' claims. If the claims are derived from rights that they hold in group status, then the claims are common and undivided. If not, the claims are separate and distinct. *Potrero Hill Community Action Committee v. Housing Authority*, 410 F.2d 974, 978 (9th Cir. 1969). In *Potrero,* we held that the claims of tenants in a housing project were separate because their claims were derived from their own individual leases, not from rights that they held as a tenants' group. *Id.* Other courts have applied a property-based analysis to hold that plaintiffs making claims in their status as joint or co-tenants or under a single instrument share common claims. *See, e.g., Broenen v. Beaunit Corp.*, 305 F.Supp. 688, 692 (E.D. Wisc.1969) (action to enforce terms of trust indenture is a true class action), *aff'd,* 440 F.2d 1244 (7th Cir.1970); *Edgerton v. Armour & Co.*, 94 F.Supp. 549, 553–54 (S.D.Cal. 1950) (action for an accounting is a true class action because right asserted under a single contract); *See* 14B C. Wright, A. Miller, E. Cooper, *Federal Practice And Procedure* § 3704 at 483–85 (1985) for more examples of common and undivided claims.

These cases suggest that the shareholders' claims here are common and undivided. Under California law, the source of the shareholders' claim for the wrongful depletion of corporate assets is the common and undivided interest each shareholder has in a corporation's assets and a right to share in dividends. *Miller v. McColgan*, 17 Cal.2d 432, 110 P.2d 419, 421 (1941). Be-

---

**2.** We note that Eagle's complaint prays for $38 million in damages or ten percent of the refund alleged to have injured Pacific. The class Eagle purports to represent owned approximately ten percent of Pacific's stock when the complaint was filed. Individual shareholder suits are not usually permitted when the shareholders share a common injury to their stock. 12B *Fletcher Cyclopedia Of The Law Of Private Corporations* § 5913 (1984). Eagle's prayer for relief indicates that all of Pacific's shareholders suffered a common injury, divisible in proportion to their ownership of Pacific stock.

**3.** In *Snyder,* the Supreme Court preserved the character of interest analysis developed before the 1966 revision of Rule 23 of the Federal Rules of Civil Procedure to distinguish between spurious and true class actions. Claims of individual class members could only be aggregated in true class actions. 14B C. Wright, A. Miller, E. Cooper *Federal Practice And Procedure* § 3705 (1985).

cause shareholders do not own the corporation's assets, the wrongful depletion of corporate assets is an injury to the corporation and only an indirect injury to the shareholders. For this reason, shareholders normally cannot recover in their individual capacities for a wrongful depletion of corporate assets. *O'Hare v. Marine Electric Co.*, 229 Cal.App.2d 33, 39 Cal.Rptr. 799, 800 (1964).

It is true that we have assumed that California would permit the shareholders to sue individually in the circumstances of this case, in order to avoid the possibility of a wrong without a remedy. That permission, however, does not change the nature or source of the shareholders' claim, which is rooted in an injury to the assets of the corporation. The effect on the shareholders' stock value was indirect—a mere reflection of the alleged loss of corporate assets.

Insofar as the nature or source of their injury is concerned, the shareholders here are in the same position as shareholders bringing the more typical shareholders' derivative suit. Claims are aggregated in those cases because they are "favored with the fiction that plaintiffs' possible recovery is not the measure of the amount involved for jurisdictional purposes but that the test is the damage asserted to have been sustained by the defendant corporation." *Koster v. Lumbermens Mutual Casualty Co.*, 330 U.S. 518, 523, 67 S.Ct. 828, 831, 91 L.Ed. 1067 (1947), 14B C. Wright, A. Miller, E. Cooper, *Federal Practice And Procedure* § 3705 at 95 (1985).

■ The Supreme Court's decision in *Snyder v. Harris*, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969), involved a different kind of claim. There minority shareholders brought a class action to recover the premium that certain majority shareholders received for the sale of their con-

trolling stock. The Supreme Court did not permit aggregation. Under the applicable Missouri law, however, the minority shareholders had an individual and direct right to recover a share of the premium received by the majority controlling shareholders. No right accrued to the corporation and no injury was done to the corporation. The claim of the minority shareholders was in no way dependent upon or derivative of an injury to the corporation. Quite the contrary is true of Eagle's claim, which derives wholly from an alleged injury to the corporation's assets [4].

We conclude, therefore, that the minority shareholders' claims asserted in this case must be characterized as common and undivided. Therefore, the amount in controversy is the $38 million fund that Eagle sought in his initial complaint. The district court properly exercised jurisdiction after removal of this case from state court pursuant to 28 U.S.C. §§ 1332, 1441 because the district court had original diversity jurisdiction.

### 2. Standard of Review

We review a grant of summary judgment de novo to determine whether there is a genuine issue of material fact and whether the substantive law was correctly applied. *Greenfield v. Kootenai County*, 752 F.2d 1387, 1388 (9th Cir.1985). The material facts are set forth in two stipulations of fact filed by the parties and are not in dispute.[5]

### 3. Damages Caused by the Refund

■ Eagle contends that the $381 million refund injured the minority shareholders by depreciating the value of their stock. The district court held that the refund did not injure the minority shareholders because if Pacific had avoided the refund by adopting accelerated depreciation, the tax

---

4. The shareholders intended division of the $38 million fund pro rata does not make their claims separate and distinct. It is proper to aggregate the value of jointly held rights when "several plaintiffs sue to enforce a common and undivided interest which is separate and distinct

as between themselves." 1 *Moore's Federal Practice* § 0.97[3] at 962 (1984).

5. We reject Eagle's argument in his brief that there is a material issue of fact for trial on whether Eagle was damaged.

benefit would have flowed through to the ratepayers and Pacific would not have collected an offsetting amount in utility rates. We agree with the district court that the minority shareholders were not injured by the $381 million refund.[6] The district court properly entered summary judgment in favor of ATT on Eagle's refund claim because a plaintiff cannot state a claim in the absence of an injury.

### 4. Pretrial Order

At the oral argument on the cross-motions for summary judgment, Eagle attempted to articulate a new damage theory: namely, that the minority shareholders' shares were undervalued at the time of the ATT–Pacific merger because of a $1.5 billion tax liability then on Pacific's books that was reduced after the merger was completed. Eagle contended that the tax liability would not have accrued if Pacific had adopted accelerated depreciation in 1968[7]. Eagle did not change its prayer for damages; it continued to request $38 million or ten percent of the refund (approximately $42 million with interest). The district court held that new theory was precluded by a pretrial Status Conference Order issued on January 10, 1983, pursuant to the parties' stipulation.

On appeal, Eagle contends that under Rule 54(c) of the Federal Rules of Civil Procedure he is entitled to the appropriate relief for his claim based on breach of fiduciary duty even if he has not demanded that relief in his pleadings. He argues that the short and plain statement of his claim in his complaint encompassed his new theory of damages and that the district court incorrectly characterized this theory as a new claim.

We agree with the district court that the pretrial Status Conference Order precluded Eagle from raising a new theory of relief at the summary judgment stage. The order provided that "[n]o further mo-

tions for leave to amend the complaint will be entertained except on showing of good cause based on new facts that have come into existence subsequent to the date of this order." A Rule 16(e) order controls the subsequent course of action in the litigation unless it is modified by a subsequent order. Fed.R.Civ.P. 16(e). Although we liberally construe pretrial orders, a theory will be barred if not at least implicitly included in the order. *United States v. First National Bank of Circle*, 652 F.2d 882, 886 (9th Cir.1981).

We find that the tax liability theory was not implicit in the pretrial order. Eagle's initial and amended complaints allege that the minority shareholders were injured by the refund Pacific was ordered to pay. Neither complaint mentions the tax liability. The Stipulation of Facts filed by both parties pursuant to the Status Conference Order states that "[i]t is this $418 refund [$381 refund with interest] that forms the basis of plaintiff's complaint in this case." Until the summary judgment stage, Eagle framed his claim as a right to recover for the portion of the refund. Only then did he attempt to change his theory of recovery. It would be unfair to the defendant to permit the plaintiff to change strategies at that late stage of litigation. The district court did not abuse it discretion by enforcing the pretrial order.

Because we uphold the enforcement of the pretrial order, we do not reach the issue of whether the CPUC decision approving the ATT–Pacific merger collaterally estopped Eagle from raising the tax liability theory.

AFFIRMED.

---

6. We note that Eagle virtually abandoned this theory of liability on appeal in favor of his theory that the tax liability injured the minority shareholders.

7. Of course, CPUC would presumably have required much or all of the saving to be passed on to ratepayers.