Allison SOUSA, as Executor of the Will of Christopher SOUSA, deceased; Brendan Sousa, Evan Sousa, and Zackery Sousa, minors, by Allison Sousa guardian ad litem, Plaintiffs,

v.

UNILAB CORPORATION CLASS II (NON–EXEMPT) MEMBERS GROUP BENEFIT PLAN; Principal Mutual Life Insurance Company; and 1 through 20 inclusive, Defendants

No. CV F 01 6060 AWI DLB.

United States District Court, E.D. California.

Aug. 14, 2002.

Michael Eldon Vergara, Somach, Simmons and Dunn, Sacramento, CA, for Allison Sousa, As Executor of the Will of Christopher Sousa, deceased aka Christopher Sousa, Brendan Sousa, minor by Allison Sousa guardian ad litem, Evan Sousa, minor by Allison Sousa guardian ad litem, Zackery Sousa, minor by Allison Sousa guardian ad litem.

Henry Chi–Jen Wang, Manatt, Phelps and Phillips, Los Angeles, CA, for Unilab Corporation Class II (Non–Exempt) Members Group Benefit Plan, Principal Mutual Life Insurance Company.

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

ISHII, District Judge.

This action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461 ("ERISA"). This court has jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e). Plaintiffs Allison Sousa, as Executor of the Will of Christopher Sousa, Brendan Sousa, Evan Sousa, and Zachery Sousa, minors by Allison Sousa guardian ad litem, ("Plaintiffs") are the family of Christopher Sousa. De-

fendant Unilab Corporation Class II (Non–Exempt) Members Group Benefit Plan ("Plan") is an employee group benefit plan established by decedent Christopher Sousa's employer. Defendant Principal Mutual Life Insurance Company ("Principle") was the insurer of the Plan and administered claims for the Plan. Pending before the court are cross motions for summary judgment. At issue is whether this action is barred by the statute of limitations and whether Decedent Christopher Sousa's death was a result of a willful self injury.

## PROCEDURAL HISTORY

On August 9, 2001, Plaintiffs filed a complaint. Plaintiffs contend that Defendants denied them · accidental death benefits wrongfully, unreasonably, irrationally, and contrary to the evidence, terms of the Plan, and law. Plaintiffs contend they are entitled to payment of the accidental death benefits.

On April 5, 2002, the court held a pretrial conference with the parties. The court and the parties agreed that this case would be resolved by cross motions for summary judgment. On April 8, 2002, the court vacated the trial date and set a briefing schedule for the cross motions for summary judgment.

On May 6, 2002, Defendants filed a motion for summary judgment. Defendants contend that this action is barred by the limitations period contained in the Plan. Assuming the action is not barred, Defendants contend Plaintiffs are not entitled to accidental death benefits. Defendants claim decedent's death was not an accident because death was a foreseeable event and an expectation of survival was not objectively reasonable.

On May 6, 2002, Plaintiffs filed a motion for summary judgment. Plaintiffs contend their claim is not barred by the applicable statute of limitations. Plaintiffs contend their claim for accidental death benefits is not precluded by the Plan's willful self injury exclusion.

On May 20, 2002, Defendants filed an opposition to Plaintiffs' motion for summary judgment.

On May 20, 2002, Plaintiffs filed an opposition to Defendants' motion for summary judgment.

On May 28, 2002, Defendants filed a reply to Plaintiffs' opposition to Defendants' motion.

On May 28, 2002, Plaintiffs filed a reply to Defendants' opposition to Plaintiffs' motion.

On June 6, 2002, the court vacated the hearing on the parties' motions. The court's order allowed the parties to provide the court with a letter brief containing any arguments in response to the reply briefs that would have been made at the hearing. On June 13, 2002, the court received a letter brief from Plaintiffs. On June 28, 2002, the court received a notice of a new Ninth Circuit case from Plaintiffs.

## LEGAL STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Poller v. Columbia Broadcasting System,* 368 U.S. 464, 467, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); *Jung v. FMC Corp.,* 755 F.2d 708, 710 (9th Cir.1985); *Loehr v. Ventura County Community College Dist.,* 743 F.2d 1310, 1313 (9th Cir. 1984).

> Under summary judgment practice, the moving party [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. 2548. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323, 106 S.Ct. 2548.

When the moving party has the burden of proof at trial, that party must carry its initial burden at summary judgment by presenting evidence affirmatively showing, for all essential elements of its case, that no reasonable jury could find for the nonmoving party. *United States v. Four Parcels of Real Property,* 941 F.2d 1428, 1438 (11th Cir.1991) (en banc); *Calderone v. United States,* 799 F.2d 254, 259 (6th Cir. 1986); *see also E.E.O.C. v. Union Independiente De La Autoridad De Acueductos Y Alcantarillados De Puerto Rico,* 279 F.3d 49, 55 (1st Cir.2002) (stating that if "party moving for summary judgment bears the burden of proof on an issue, he cannot prevail unless the evidence that he provides on that issue is conclusive.")

If a motion for summary judgment calls for the court to apply law to undisputed facts, it is a mixed question of law and fact. *HIH Marine Insurance Services, Inc. v. Virgin Atlantic Airways,* 105 F.Supp.2d 1083, 1091 (N.D.Cal.2000). A mixed question of fact and law occurs when the facts are undisputed, the relevant law is accepted, and the issue for the court is whether the facts satisfy the legal rule. *Pullman–Standard v. Swint,* 456 U.S. 273, 289 n. 19, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982). "When a mixed question of fact and law involves undisputed underlying facts, summary judgment is appropriately granted." *Han v. Mobil Oil Corp.,* 73 F.3d 872, 874 (9th Cir.1995); *In re Software Toolworks, Inc.,* 789 F.Supp. 1489, 1495 (N.D.Cal. 1992). Thus, where the case turns on a mixed question of fact and law and the only dispute relates to the legal significance of the undisputed facts, the controversy for trial collapses into a question of law suitable for disposition on summary judgment. *See Union Sch. Dist. v. Smith,* 15 F.3d 1519, 1523 (9th Cir.1994); *Graham v. City of Chicago,* 828 F.Supp. 576, 583 (N.D.Ill.1993). Finally, if a motion for summary judgment questions only issues of law, the resolution of which does not involve disputed material facts, summary judgment is also appropriate. *Delbon Radiology v. Turlock Diagnostic Center,* 839 F.Supp. 1388, 1391 (E.D.Cal.1993).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c); *Poller,* 368 U.S. at 468, 82 S.Ct. 486; *SEC v. Seaboard Corp.,* 677 F.2d 1301, 1305–06 (9th Cir. 1982).

### UNDISPUTED FACTS [1]

Beginning in February 20, 1990, Christopher Sousa was employed by Unilab as a

---

1. The Undisputed Facts have been taken from the facts the parties agree are undisputed in

phlebotomist. As part of his employment compensation package, Mr. Sousa was covered under the Plan. The Plan is an employee benefit plan established by Unilab and governed by ERISA.

On or about March 1, 1996, Principal Financial Group issued to Unilab Corporation, Group Policy No. GL 88375 ("Policy"). Part IV of the Policy provides the life insurance benefit and accidental death benefits for non-exempt employees as follows:

> Subject to the Effective Date provisions of PART III, Section B, and the qualifying provisions of the Section A, the Scheduled Benefit for an insured Member will be:
>
> . . . .
>
> Class II (Non–Exempt) . . .
> The amount that is equal to the Member's Basic Annual Compensation multiplied by 1½ (this amount will be rounded to the next higher $1,000 if it is not already an exact multiple of $1,000) . . . .
>
> . . . .
>
> **Accidental Death and Dismemberment Insurance,** . . . .
> **Article 3—Benefits Payable**
> If all of the benefit qualifications are met, the Company will pay:
> a. The Scheduled Benefit (or approved amount, if applicable) in force for loss of life;
>
> . . . .

Under the Terms of the Policy, accidental death benefits are payable when certain terms are met. Specifically, the Policy Provides:

> **Benefit Qualifications**
> To qualify for benefit payment, all of the following must occur.
> The Member must be injured while insured for Accidental Death and Dismemberment Insurance under this policy; and

their respective proposed Statements of Un-

> The injury must be through accidental means; and
> The injury must be the direct and sole cause of loss listed in this Section B, Article 3; and
> The loss must occur within 90 days of the injury; and
> The limitations listed in this Section B., Article 4 must not apply; and
> The claim requirement listed in this Section B, Article 5, must be satisfied.
>
> . . . .
>
> **Article 4—Limitations**
> Payment will not be made for any loss to which a contributing cause is:
> a. Willful self-injury or self-destruction, while sane or insane;
>
> . . . .

The Policy also provides:

> **Prompt Filing**
> Completed claims forms and other information needed to prove loss should be filed promptly. Proof of loss should be sent to Us within 90 days after the date of loss. Proof of loss sent later will be accepted only if there is reasonable cause for delay.
>
> . . . .
>
> **Legal Action**
> Legal action to recover Accidental Death and Dismemberment benefits may not be started earlier than 60 days after proof of loss has been filed. Further, no legal action may be started later than three years after that proof is required to be filed.
> **Time Limits**
> Any time limit in this Article 5 will be extended to meet the minimum required by law.

Defendant Unilab Corporation gave its employees a benefits booklet entitled:

disputed Facts.

*UNILAB CORPORATION CLASS II (NON–EXEMPT) MEMBERS GROUP BENEFIT PLAN* ("Booklet"). In the Booklet the following statements appear:

### MEMBER LIFE INSURANCE

If you die, your beneficiary will be paid the Scheduled Benefit in force for you (however, see the exception noted below). The Scheduled Benefit is based on your class:

. . . .

### BASIC LIFE INSURANCE

. . . .

All Class II (Non–Exempt) Members

. . . . The amount that is equal to 1½ times your Basic Annual Compensation (this amount will be rounded to the next higher $1,000, if it is not already an exact multiple of $1,000).

. . . .

### BASIC ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE

. . . .

All Class II (Non–Exempt) Members

. . . . The amount that is equal to 1½ times your Basic Annual Compensation (this amount will be rounded to the next higher $1,000, if it is not already an exact multiple of $1,000).

. . . .

### LIMITATIONS

Payment will not be made for any loss to which a contributing cause is:

Willful self-injury or self-destruction, while sane or insane;

. . . .

### LEGAL ACTION

Legal action for a claim may not be started earlier than 60 days after proof of loss is filed. Further, no legal action may be started later than three years after proof is required to be filed.

. . . .

### TIME LIMITS

All time limits listed in this section will be extended to meet any minimum required by laws.

Christopher Sousa died on March 10, 1997. At the time of his death, his salary was $20,800.00.

On March 10, 1997, Stanislaus County prepared a Coroner's Memorandum for Christopher Sousa, File No. S97–05637. In the Coroner's Memorandum, the following statement appears: "Victim found unresponsive on knees with plastic bag on head with head in sink full of water."

On March 10, 1997, the Stanislaus County Sheriff's Department prepared an Incident Report, File No. S97–05637, relating to the death of Christopher Sousa ("Incident Report"). The Incident Report contains the following statement:

[Witness] said he pounded on the bathroom door for approx. 10 minutes, but received no response. [Witness] said he kicked in the bathroom door and found Sousa inside. [Witness] described Sousa's position as, on his knees leaning forward against the bathroom sink. Sousa's arms dangling at his sides. Sousa had a plastic bag over his head wrapped around his neck pretty tight— but not tied. Sousa's head was leaning forward into the bathroom sink with his chin resting on the edge of the sink. Sousa was naked except for his socks. His clothing was siting on the ground to the left side of him. The bathroom sink was plugged and full of water with the faucet turned on.

In the Incident Report, the following paragraph also appears:

After speaking with the wife [Allison Sousa] and questioning her regarding her husband's emotional state, she told me that her husband had been in his usual good spirits. He had no unusual stresses recently. He had spoken with his children on the date of his death and

confirmed plans that they had made for activities together when he returned home from work that day. No note with suicidal ideation had been found in the residence or at the workplace.

On March 13, 1997, the Stanislaus County, Office of the Coroner, completed an Autopsy Report for Christopher Sousa ("Autopsy Report"). The Autopsy Report contains the following statement:

CERTIFICATION:

A. Asphyxia

B. Plastic Bag Over Head, Immersed in Full Sink of Water

C. Engaged in autoerotic experiment.

On March 13, 1997, Toxicology Report No. CVT–97–1899 on the blood of Christopher Sousa ("Toxicology Report") was prepared for the Stanislaus County Coroner's Office. The Toxicology Report contains the following statements:

Complete Drug Screen: No common acidic, basic or neutral drugs detected. No blood Ethyl alcohol detected.

On March 17, 1997, the Stanislaus County Department of Public Health, issued a Certificate of Death for Christopher Sousa ("Death Certificate"). In the Death Certificate, the following statement appears:

107. DEATH WAS CAUSED BY: ...

(A) Asphyxia

(B) Plastic Bag Over Head, Immersed in Full Sink of Water

(C) Engaged in autoerotic experiment

In the Death Certificate, Stanislaus County Deputy Coroner Leslie Gangi certifies that the manner of death was an "ACCIDENT."

As a non-exempt employee under the Policy, Mr. Sousa's term life insurance benefits were $32,000.00. On or about June 5, 1997, Principal paid life insurance benefits in the amount of $32,000.00 to Ms. Sousa, the beneficiary under the Policy. Principal advised Ms. Sousa that the claim for accidental death benefit required fur-

ther review. Specifically, Michael Flosi sent a letter to Ms. Sousa in which he states in part:

The Accidental Death benefit of $32,000.00 has been pended and requires further review. I have requested our Legal Department to review California Law to assist in our review for eligibility of Accidental Death Benefits.

After receiving a response from the Legal Department, I will advise you whether the Accidental Benefits can be paid.

On or about August 12, 1997, Shelley Hutchins with Principal sent a letter to Allison Sousa in which she states in part:

As you are aware, we have been reviewing your claim for Accidental Death Benefits through Mr. Sousa's former group disability policy with Unilab Corporation. After a complete review, including a review from our law department, we regret me feel (sic.) we must decline your claim for Accidental Death Benefits.

. . . .

In applying the above policy provisions to the review of your claim, we have determined that Mr. Sousa did not meet the benefit qualifications as set forth above. As stated above, the injury must be through accidental means. We have received the police report from Modesto Police Department along with the autopsy examination from Delta Pathology Associates. Both of these reports outline the exact circumstances surrounding Mr. Sousa's death. According to the information contained in these reports, Mr. Sousa intended to injure himself, even if he did not intend his death. The reports outline Mr. Sousa secreting himself into a locked room, put a plastic bag over his head, tightening the bag around his throat, putting his head under water and using no apparent "safety" mechanism. These facts show

that his action was, in our opinion reckless and that death was a reasonable foreseeable consequence of his actions. Therefore, his death was not accidental under this policy, even if he did not intend to die.

Even if Mr. Sousa's death was found to be accidental within the meaning of the policy, recovery would be barred under the policy provision that excluded recovery for willful self-injury or self-destruction. Although Mr. Sousa may not have intended to produce the level of unconsciousness that resulted in the death, his voluntary acts were intended to temporarily restrict his air supply to heighten the sensation of his autoerotic experiment. Therefore, we feel that his action amounted to willful self-injury.

On December 8, 1997, Michael Vergara, counsel for Allison Sousa, sent a letter to Shelley Hutchins at Principal in which he requests a review of Principal's denial of accidental death benefits.

On or about December 10, 1997, Pat Slusinski with Principal sent a latter to Michael E. Vergara in which he states in part:

Your letter dated December 8, 1997 was received in our office December 9, 1997. We will review the complete file and will advise you of our direction on the claim at that time.

On or about December 30, 1997, Anita Brown and Marlene Evans, both with Principal, sent a letter to Michael E. Vergara in which they state in part:

In conclusion, while we believe Mr. Sousa's death was a result of accidental means, accidental death benefits are not payable here given that his death was the result of willful self-injury or self-destruction, while sane or insane as outlined on page 13 of the Employee Booklet.

On August 9, 2001, Plaintiffs commenced this action. On October 1, 2001, Defendants filed an Answer in this action. Defendants' Second Affirmative Defense states:

The Complaint, and each cause of action asserted therein, is barred, in whole or in part, because plaintiff failed to bring forth the instant action before "three years after proof is required to be filed," as required by the Plan.

On October 12, 2001, the parties to this action filed their Joint Scheduling Report. Paragraph 4 of the Joint Scheduling Report states in part:

The sole legal issue is whether the Plan's limitation for death contributed to by "willful self-injury or self-destruction, while sane or insane" excludes plaintiffs' recovery of accidental death benefits.

On December 12, 2001, the court issued its Scheduling Conference Order for this action. Paragraph 5 of the Scheduling Conference Order states on part:

B. Contested:

(1) The sole legal issue is whether the Plan's limitation for death contributed to by "willful self-injury or self-destruction while sane or insane" excludes plaintiffs' recovery of accidental death benefits.

On March 29, 2002, the parties to this action filed their Joint Pretrial Statement ("JPS"). Paragraph 3(b) of the JPS states:

Plaintiff Allison Sousa is the designated beneficiary under the ERISA Plan provided and administered by defendants.

Paragraph 3(h) of the JPS states in part:

Mr. Sousa's term life insurance benefits under the Plan was $32,000.00. On or about June 5, 1997, Principal paid the life insurance benefits in the amount of $32,000.00 to Mrs. Sousa.

Paragraph 4 of the JPS states in part:

*DISPUTED FACTUAL ISSUES*

**1054**

(a) Whether Decedent's death by autoerotic asphyxiation constitutes "willful self-injury or self-destruction" as stated in the exclusion, thereby relieving defendants of their obligation to pay Plaintiffs the accidental death benefit.[2]

## DISCUSSION

### A. Limitation Period

Defendants contend in their motion for summary judgment that they are entitled to summary judgment because this action was filed outside the contractual limitations period. Plaintiffs contend that they filed this action within the statutory limitations period.

### 1. Applicable Statute of Limitations

▮▮▮ Under ERISA, the statute of limitations for an action to recover from a California employer is four years. *Wetzel v. Lou Ehlers Cadillac,* 222 F.3d 643, 648 (9th Cir.2000) (en banc); *No. Cal. Retail Clerks Unions & Food Employers Joint Pension Trust Fund v. Jumbo Mkts., Inc.,* 906 F.2d 1371, 1372 (9th Cir.1990). An ERISA cause of action accrues either at the time benefits are actually denied or when the insured has reason to know that the claim has been denied. *Wetzel,* 222 F.3d at 649. The parties agree that Principal initially denied the accidental death benefits on August 12, 1997. On December 8, 1997, Plaintiff asked Principal to review the denial. The parties agree that Principal assented to review its denial, and on December 30, 1997, Principal reiterated

its denial of the accidental death benefits. This action was filed on August 9, 2001. Thus, Plaintiffs contend this action was timely filed because it was filed less than four years from Principal's initial denial of benefits.

While Defendants do not dispute that this action was filed within four years of when it accrued, Defendants contend that a shorter statute of limitations applies. Defendants contend a three year statute of limitations applies based on the Policy.

The parties agree that Part IV, Section B, Article 5 of the Policy provides

Legal action to recover Accidental Death and Dismemberment benefits may not be started earlier than 60 days after proof of loss has been filed. Further, no legal action may be started later than three years after that proof is required to be filed.

The parties also agree that this section further states:

Any time limit in this Article 5 will be extended to meet the minimum required by law.[3]

Defendants contend that because the Policy provides for a three year statute of limitations, a three year statute of limitations applies to this action. Plaintiffs contend that because the statute of limitations for ERISA actions in California is four years and because the Policy specifically states that the time limits will be extended to meet any minimum required by law, a four year statute of limitations applies.

---

2. In their proposed Statement of Undisputed Facts, Plaintiffs offer a portion of the Diagnostic and Statistical Manual of Mental Disorders, which describes "hypoxyphilia." Defendants' objection to this material on the ground that the parties agreed no facts were disputed and this information was not disclosed earlier is sustained. Because cases based on similar fact patterns also describe autoerotic asphyxiation, additional evidence is unnecessary.

3. The Booklet contains similar language:

Legal action for a claim may not be started earlier than 60 days after proof of loss is filed. Further, no legal action may be started later than three years after proof is required to be filed.

. . . .

All time limits listed in this section will be extended to meet any minimum required by laws.

Courts have traditionally found that "in the absence of a controlling statute to the contrary, a provision in a contract may validly limit, between the parties, the time for bringing an action on such contract to a period less than prescribed in the general statute of limitations, provided that the shorter period itself shall be reasonable." *Order of United Commercial Travelers v. Wolfe*, 331 U.S. 586, 608, 67 S.Ct. 1355, 91 L.Ed. 1687 (1947). Several courts have applied this general contract rule to claims brought under ERISA. *See, e.g., Northlake Reg'l Med. Ctr. v. Waffle House Sys. Employee Benefit Plan*, 160 F.3d 1301 (11th Cir.1998) (holding that contract limitations in ERISA plans are enforceable provided they are reasonable and finding 90 day period reasonable and enforceable); *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869 (7th Cir.1997) (upholding plan's three-year limitations period instead of state's six-year breach of contract period); *Alcorn v. Raytheon Co.*, 175 F.Supp.2d 117 (D.Mass.2001) (holding contractual limitation period of three years reasonable and enforceable); *Allen v. Unionmutual Stock Life Ins. Co.*, 989 F.Supp. 961 (S.D.Ohio 1997) (upholding three year contractual statute of limitations); *Bomis v. Metropolitan Life Ins. Co.*, 970 F.Supp. 584 (E.D.Mich.1997) (allowing three year statute of limitations for ERISA claim); 44 Am.Jur.2d Insurance § 1879 (1982) ("Rule that contractual limitations periods shorter than statute of limitations are permissible provided they are reasonable is applicable to ERISA plans . . . .").

■ The reasoning of these cases allowing for contractual limitation periods in ERISA plans if they are reasonable is persuasive. An ERISA plan is essentially a contract in which the parties are allowed to include whatever limitations they desire. *See Northlake*, 160 F.3d at 1303. While an employer might not negotiate an ERISA plan with individual employees, the creation of unreasonable barriers in such a

plan may hurt an employer by causing an employee backlash. *See id.; Blue Cross & Blue Shield*, 112 F.3d at 874. The market incentive to deal fairly with a plan's beneficiaries is backed up by requiring that any contractual limitation must be reasonable. *See Northlake*, 160 F.3d at 1304; *Blue Cross & Blue Shield*, 112 F.3d at 874–75. Thus, this court agrees with those courts that have allowed contractual limitation periods shorter than those provided by state law in ERISA actions.

The Ninth Circuit has implied that it would allow a shorter statute of limitations for an ERISA claim if one is contained in a policy. In *Wetzel*, 222 F.3d 643 (9th Cir. 2000), cited above, the Ninth Circuit determined that a four year statute of limitations would apply to ERISA claims. *Id.* at 647–48. The Ninth Circuit then applied the four year limitation period to the facts of the case and concluded that the action was filed within the four year statutory limitation period. *Id.* at 650. However, the Ninth Circuit did not end its inquiry there and went on to state that "the next inquiry is whether Wetzel's action is contractually barred by the limitations provision in the policy." *Id.* The Ninth Circuit stated that the policy at issue provided that an action to recover benefits under the policy must be commenced within three years after the time written proof of the loss is required. *Id.* The Ninth Circuit ultimately remanded the case to the district court because applying the contract's terms was not possible in light of the lack of information in the record on when the proof of loss was decided. *Id.* Despite the fact that the Ninth Circuit in *Wetzel* did not specifically find whether the policy's three limitation period was violated, the fact the Ninth Circuit found the action not barred by ERISA's four year limitation period but then proceeded to decide whether the action was barred by the policy's three year limitation period implies

that the Ninth Circuit believes ERISA's four year limitation period can be modified by the terms of a policy. Thus, the court finds that the three year limitation period found in the Plan is valid if it is reasonable.

■ Plaintiffs' position is that this court should not adhere to the three year contractual limitation period. However, Plaintiffs do not argue that the three year contractual limitation period is unreasonable. Rather, Plaintiffs' position is that the policy and booklet state that all time limits will be extended to meet any minimum required by law. As such, Plaintiffs contend that the policy's statute of limitations is extended to be the standard ERISA four year statute of limitations. On the other hand, Defendants interpret this provision as only requiring that the three year limitation period not apply if it is barred by law. Because contractual limitations in ERISA polices are allowed if reasonable, Defendants contend the three year period does not violate the law.

Plaintiffs offer no authority for their position that the policy's requirement that all time limits be extended to meet the minimum required by law adopts ERISA's four year statute of limitations. A review of relevant case authority reveals no case dealing with a similar provision. Thus, the court must interpret what is meant by the Plan's provision stating that any time limit will be extended to meet any minimum required by law.

■■ Federal law governs the interpretation of ERISA insurance policies. *Padfield v. AIG Life Ins. Co.*, 290 F.3d 1121, 1125 (9th Cir.2002); *Deegan v. Continental Cas. Co.*, 167 F.3d 502, 507 (9th Cir.1999); *Babikian v. Paul Revere Life Ins. Co.*, 63 F.3d 837, 840 (9th Cir.1995). However, the court may use state law to guide its decision making process if state law is consistent with the goals and objectives of ERISA. *Deegan*, 167 F.3d at 507.

The Ninth Circuit has found that terms in ERISA insurance policies should be interpreted "in an ordinary and popular sense as would a person of average intelligence and experience." *Simkins v. NevadaCare, Inc.*, 229 F.3d 729, 734–35 (9th Cir.2000); *Deegan*, 167 F.3d at 507; *Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1441 (9th Cir.1990). Ambiguous language is construed in favor of the insured and against the insurer. *McClure v. Life Ins. Co. of N. Am.*, 84 F.3d 1129, 1134 (9th Cir.1996). However, if a reasonable interpretation favors the insurer and finding another interpretation would be strained, the court is not to torture or twist the language of the policy. *Simkins*, 229 F.3d at 735; *Evans*, 916 F.2d at 1441.

Contrary to Plaintiffs' position, the Plan does not provide that all time limits will be extended to be the same as any applicable statute of limitations established by law. Rather, the policy provides that any "time limit [in the policy or in the booklet] . . . will be extended to meet any minimum required by law." The law does not require all statutes of limitations for ERISA claims be four years. Rather, as discussed above, the law allows for shorter limitation periods if they are reasonable, and the Ninth Circuit has impliedly approved of a contractual three year limitation period. Because the plan's three year limitation period is allowed by law, the four year limitation period provided by statute for ERISA claims is not substituted into the Plan.

Different language in the Plan would be necessary to have the meaning advanced by Plaintiffs. Had the contractual limitations provision of the Plan provided that the time limits would be extended to be the statute of limitations used in the absence of a contractual provision, the language would have stated that the any time limit is extended to be the time limit al-

lowed by law in the absence of a contractual period. Further, had the plan provided that the time limits would be extended to meet the maximum required by law, the language would have provided that any time limit is extended if the statutory period is longer than the contractual period or to be the maximum allowed by law. Finally, if the Plan meant to adopt the statute of limitations provided by the state, the Plan would have either explicitly said so or not had any statute of limitations. Thus, the provision that any time limit is extended to meet the one required by law does not mandate a four year limitation period because the three year limitation period is allowed by law.

The Ninth Circuit's decision in *Mogck v. Unum Life Ins. Co. of America*, 292 F.3d 1025 (9th Cir.2002), which Plaintiff recently provided the court, does not require a contrary result. In *Mogck*, after two years of paying disability benefits, the defendant wrote the plaintiff a letter advising that it was discontinuing disability payments. *Id.* at 1027. The plaintiff provided additional medical documents, and the defendant concluded that it would still terminate benefits. *Id.* The plaintiff sued under ERISA. *Id.* After recognizing that a four year statute of limitations normally applies to ERISA claims, the Ninth Circuit noted that the policy provided that any legal action could not be started "more than three years after the time *proof of claim* is required." *Id.* at 1028. Despite this contractual limitation period, the Ninth Circuit concluded that the three year limitation period did not apply because it began to run on the date "proof of claim is required." *Id.* at 1028–29. The Ninth found that the date "proof of claim is required" had never been triggered by the defendant. *Id.* Because the date the proof of the claim was required had never occurred because the defendant had never requested proof of the plaintiff's continuing dis-

ability claim, the three limitation period had never begun to run. *Id.* at 1029.

In this case, the Policy's three year limitation period runs "three years after [proof of loss] is required to be filed." Plaintiffs have neither argued nor presented evidence that proof of loss was never required to be filed with Defendants. The Ninth Circuit's holding in *Mogck* rests on the unique fact that because it was a continuing of disability payments case proof of the plaintiff's loss was never given to the defendants. Here there is no evidence Plaintiffs did not provide proof of loss to Defendants. Clearly, Plaintiffs must have provided proof of loss because Defendants paid life insurance benefits. Thus, Plaintiffs have failed to provide evidence that their case is similar to *Mogck* in which the contractual limitation period was never triggered because the defendant never requested and the plaintiff never provided proof of his claim.

■ The plan's contractual three year limitation period applies because it is allowed by law. This action filed more than three years after Principal's initial denial of accidental death benefits and more than three years after Principal's second denial is barred by the Plan's limitation period.

### 2. Waiver by Defendants

In its reply brief, Plaintiffs argue that Defendants have waived the right to raise a statute of limitations defense. Plaintiffs acknowledge that Defendants raised a violation of the statute of limitations as an affirmative defense in their answer. However, Plaintiffs argue that the parties' Joint Scheduling Conference Statement as well as the court's Scheduling Conference Order, signed by the Magistrate Judge, stated that the sole issue in this case is whether the Plan's limitation for a death by "willful self injury or self destruction" excludes recovery of accidental death ben-

efits in this case. There is no mention of the statute of limitations issue in the Scheduling Conference Order. Plaintiffs acknowledge that Defendants inserted the limitations period defense into the parties' Joint Pretrial Statement, but Plaintiffs argue this was improper. Plaintiffs contend that because the Scheduling Conference Order is a pretrial order under Rule 16 of the Federal Rules of Civil Procedure it cannot be modified without leave of court and Defendants are barred from raising the statute of limitations defense because it was not in the Scheduling Conference Order.

■■■ Under Federal Rule of Civil Procedure 16(e) the final pretrial order controls the subsequent course of the action and the court shall modify the pretrial order "only to prevent manifest injustice." The purpose of the final pretrial order is "to guide the course of the litigation," and "[o]nce formulated, [it] should not be changed lightly...." Fed.R.Civ.P. 16(e), Advisory Committee Note (citing *Clark v. Pennsylvania R.R. Co.*, 328 F.2d 591.(2d Cir.1964)). The Ninth Circuit has stressed the crucial role played by final pretrial orders in "implementing the purposes of the Federal Rules of Civil Procedure to secure the just, speedy, and inexpensive determination of every action." *United States v. First Nat'l Bank of Circle*, 652 F.2d 882, 886 (9th Cir.1981). District courts have broad discretion to determine the preclusive effect of a final pretrial order on the determination of issues of law and fact at trial. *Miller v. Safeco Title Ins. Co.*, 758 F.2d 364, 369 (9th Cir.1985). The general rule that a party may not "offer evidence or advance theories at trial which are not included in the order or which contradict its terms" serves to prevent unfair surprise and encourage timely and orderly litigation. *United States v. First Nat'l Bank*, 652 F.2d 882, 886 (9th Cir.1981). Although final pretrial orders should be construed liberally, theories

raised at trial must at least be implicit in the order. *Eagle v. American Tel. & Tel.*, 769 F.2d 541, 548 (9th Cir.1985).

■■■ In this case, the court never issued a final pretrial order within the meaning of Rule 16. While the parties submitted a Joint Pretrial Statement, the court never issued its Pretrial Order because the parties and the court agreed the next step in this action would be cross motions for summary judgment and not a trial. The Magistrate Judge did issue a Joint Scheduling Order that limited the issue in this action to whether accidental death benefits are available. The Joint Scheduling Order said nothing about an issue in this action being a violation of the statute of limitations. However, this Joint Scheduling Order was not the court's Pretrial Order, and it was not a final pretrial order as described in Rule 16.

A Joint Scheduling Order is issued after a Scheduling Conference. A Scheduling Conference is discussed in Rule 16(b) while a Pretrial Conference is discussed in Rule 16(c). Plaintiffs argument that Defendants' limitations period defense is barred because it was not raised in the Joint Scheduling Order is premised on Rule 16(e). Rule 16(e) provides:

> After any conference held pursuant to this rule, an order shall be entered reciting the action taken. This order shall control the subsequent course of the action unless modified by a subsequent order. The order following a final pretrial conference shall be modified only to prevent manifest injustice.

Because a Joint Scheduling Order is issued after a Rule 16(b) Scheduling Conference, Rule 16(e) provides that the Joint Scheduling Order controls the action. However, the court can modify the Joint Scheduling Order to allow Defendants to raise an affirmative defense based on the statute of limitations. Unlike a final pretrial order

that can only be modified to prevent manifest injustice, the court can easily modify a Joint Scheduling Order.

The one case relied on by Plaintiffs in which the parties were bound to the claims raised in a scheduling order and the Ninth Circuit found that the district court properly refused to amend the scheduling order is not persuasive. In *Eagle v. American Telephone and Telegraph Co.*, 769 F.2d 541 (9th Cir.1985), the plaintiff attempted to articulate a new damage theory for the first time in his summary judgment motion. *Id.* at 548. This theory was not alleged in the court's Pretrial Status Conference Order, the original complaint, or the amended complaint. *Id.* The Ninth Circuit found that until summary judgment, the plaintiff had framed his claim differently and it would be unfair to permit the plaintiff to change strategies at such a late stage of the litigation. *Id.*

In this case, Defendants have not raised a new theory for the first time in a summary judgment motion. The statute of limitations defense was raised in Defendants' answer. Further, this issue was listed in the parties' Joint Pretrial Statement and discussed at the court's Pretrial Conference. There can be no argument that Plaintiffs were prejudiced by a change in strategies because Plaintiffs always knew about Defendants' statute of limitations defense. Plaintiffs' own summary judgment motion, filed the same day as Defendants' motion, argues this action is not barred by the statute of limitations. Thus, Plaintiffs were on notice regarding the statute of limitations period defense. To the extent Rule 16(e) states any order issued pursuant to Rule 16 shall control the subsequent course of the action unless modified by a further order and the Joint Scheduling Order was issued pursuant to Rule 16, the Joint Scheduling Order is hereby amended to add Defendants' affirmative defense. Unlike the court's Pretrial Order, which can be modified only to prevent a manifest injustice, the court can amend the Joint Scheduling Order for good cause. *See* Fed.R.Civ.Pro. 16(b) Advisory Committee Note.[4] Because Plaintiffs have always been on notice about Defendants' statute of limitations defense, the court finds good cause to amend the Joint Scheduling Order.

## B. Whether Accidental Death Benefits Are Available

Because this action is barred under the Plan's three year statute of limitations, the court cannot determine whether Plaintiffs are entitled to accidental death benefits. The court is mindful of the recent Ninth Circuit opinion in *Padfield v. AIG Life Ins. Co.*, 290 F.3d 1121 (9th Cir.2002). However, because this action is barred by the statute of limitations, the court cannot reach the issue of whether Plaintiffs are entitled to relief under the reasoning in *Padfield*.

## CONCLUSION AND ORDER

Defendants' motion for summary judgment must be granted and Plaintiffs' motion for summary judgment denied. Plaintiffs filed this action outside the three year contractual limitation period. While the Plan does provide that all time limits are extended to meet the minimum required by law, the law allows parties to contract for a limitation period less than the standard four year statute of limitations for ERISA actions provided the contractual period is reasonable. Because there is no argument that the three year limitation

---

**4.** The court notes that those changes to a scheduling order discussed by the Advisory Committee were changes to the schedule's deadlines. This implies such an order is meant to set out deadlines for the parties and not to bind the parties from litigating issues accidentally omitted from the joint scheduling report.

period is not reasonable, the three year limitation period is allowed by law. This action filed more than three years after Plaintiffs' claim for accidental death benefits were denied violates the contractual limitation period. Thus, Defendants are entitled to summary judgment. The court cannot reach the issue of whether accidental death benefits should be awarded.

Accordingly, for the reasons stated in the above Memorandum Opinion, IT IS HEREBY ORDERED that:

1. Defendants' motion for summary judgment is GRANTED;

2. Plaintiffs' motion for summary judgment is DENIED; and

3. The Clerk of the Court is DIRECTED to enter judgment for Defendants.