RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0120p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

THE SIDING AND INSULATION COMPANY, INC., individually and as a class of similarly-situated persons,

     *Plaintiff-Appellant,*

   *v.*

ACUITY MUTUAL INSURANCE COMPANY,

     *Defendant-Appellee.*

No. 13-3884

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland
No. 1:12-cv-01574—James S. Gwin, District Judge.

Argued: March 20, 2014

Decided and Filed: June 10, 2014

Before: KEITH, COOK, and KETHLEDGE, Circuit Judges.

---

### COUNSEL

**ARGUED:** David M. Oppenheim, ANDERSON + WANCA, Rolling Meadows, Illinois, for Appellant. D. John Travis, GALLAGHER SHARP, Cleveland, Ohio, for Appellee. **ON BRIEF:** David M. Oppenheim, Jeffrey A. Berman, ANDERSON + WANCA, Rolling Meadows, Illinois, Scott D. Simpkins, CLIMACO WILCOX PECA TARANTINO & GAROFOLI CO., LPA, Cleveland, Ohio, for Appellant. D. John Travis, Jay Clinton Rice, Gary L. Nicholson, GALLAGHER SHARP, Cleveland, Ohio, for Appellee.

---

**OPINION**

---

COOK, Circuit Judge.   This insurance coverage dispute stems from a class action alleging that Beachwood Hair Clinic, Inc. ("Beachwood") violated the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, by disseminating more than 37,000 unsolicited fax advertisements between 2005 and 2006.  *See generally Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.* ("*Siding I*"), No. 11-CV-1074 (N.D. Ohio).  Facing more than $18 million in statutory damages, Beachwood and its insurer, Acuity Mutual Insurance Co. ("Acuity"), agreed to an approximate $4-million class settlement with the Ohio-based class representative, The Siding & Insulation Co. ("Siding").  The settlement further stipulated that separate litigation between Acuity and Siding would resolve a $2-million coverage dispute under Beachwood's policy.  (*See* R. 21-1, Underlying Settlement Judgment ¶ G.)  Per the settlement agreement, Siding filed this declaratory judgment action against Acuity under Beachwood's policy.  The district court granted summary judgment to Acuity denying coverage, prompting this appeal by Siding.

Detecting a possible jurisdictional defect, we requested supplemental briefing from the parties.  *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter [jurisdiction] delineations must be policed by the courts on their own initiative . . . .").  If the district court lacks original jurisdiction, our appellate jurisdiction extends no further than "correcting the error of the lower court in entertaining the suit." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998) (quotation omitted).  As the party requesting a federal forum, Siding bears the burden of establishing federal jurisdiction.  *See McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936); *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989).

Siding invokes diversity jurisdiction for this coverage dispute, claiming diversity of citizenship and an amount in controversy greater than $75,000.  *See* 28 U.S.C. § 1332(a).  We take issue only with the amount in controversy, which we appraise from the plaintiff's complaint.

*See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938); *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 462 (6th Cir. 2010). Unable to identify a singular interest exceeding $75,000 in the remaining $2-million coverage dispute, Siding seeks to aggregate its interest with putative class members to satisfy the diversity statute's amount-in-controversy requirement. Alternatively, Siding asks us to consider the value of the policy dispute from Acuity's perspective: $2 million. Concurring with Siding's assertion of jurisdiction, Acuity offers yet another jurisdictional basis: ancillary jurisdiction via the settlement judgment in the underlying class action.

Finding these arguments unpersuasive, we conclude that Siding fails to carry its burden of demonstrating federal jurisdiction and VACATE the district court's judgment.

I.

Since the Judiciary Act of 1789 established the district courts, the amount-in-controversy requirement has limited federal diversity jurisdiction, and "[t]he traditional judicial interpretation . . . has been . . . that the separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement." *Snyder v. Harris*, 394 U.S. 332, 335 (1969). The Supreme Court recognizes a limited exception to this anti-aggregation principle for cases where "two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." *Id.* at 335; *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 822 (6th Cir. 2006). Siding asserts such an interest here, claiming that class members share a common and undivided interest in the $2 million in insurance proceeds at stake.

Though novel in this circuit, the Seventh Circuit recently rejected this sort of aggregation argument. *See Travelers Prop. Cas. v. Good*, 689 F.3d 714 (7th Cir. 2012). There, following a $16-million class settlement against a shoe company for issuing unlawful receipts, the company's insurer filed a declaratory judgment action against the class plaintiffs seeking to avoid coverage. In dismissing the action for lack of jurisdiction, the court denied the insurance company's attempt to aggregate class members' modest claims, concluding that the underlying class lacked a common and united interest in the insurance. *Travelers*, 689 F.3d at 722–23.

Two limiting principles from our sister circuits guided the *Travelers* court's claim-aggregation analysis. First, the court adopted the Fifth Circuit's *Eagle Star* standard, confining aggregation to cases in which plaintiffs share a "joint interest in [a] fund, such that . . . plaintiffs' rights are . . . affected by the rights of co-plaintiffs." *Id.* at 722 (quoting *Eagle Star Ins. Co. v. Maltes*, 313 F.2d 778, 781 (5th Cir. 1963)). Then, borrowing from a Second Circuit case, the court examined the "nature of the right asserted," framing the relevant inquiry as whether the class members shared a "pre-existing (pre-litigation) interest in the subject of the litigation"—and not simply "whether successful vindication of the right will lead to a single pool of money that will be allocated among the plaintiffs." *Travelers*, 689 F.3d at 722 (quoting *Gilman v. BHC Sec., Inc.*, 104 F.3d 1418, 1427 (2d Cir. 1997)). The class members in *Travelers* lacked such a pre-existing interest—notwithstanding the fact that the underlying settlement predated the declaratory action—because their underlying "claims all arose from separate transactions. As the Second Circuit said in *Gilman*: 'There is no fund. The claim remains one on behalf of separate individuals for the damage suffered by each due to the alleged conduct of the defendant.'" *Travelers*, 689 F.3d at 722 (quoting *Gilman*, 104 F.3d at 1427).

We find *Travelers* instructive because our decision in *Everett* endorsed both limiting principles. *Everett*, 460 F.3d at 824, 827 (relying on *Eagle Star* and *Gilman*). *Everett* involved a state-court class action alleging contract and misrepresentation claims related to hidden cell-phone fees, removed to federal court on diversity grounds by the service-provider defendants. *See id.* at 821. Even without the added wrinkles of an underlying action and settlement judgment, the claim-aggregation theory in *Everett* bears a striking resemblance to that in *Travelers*. So do the court's reasons for rejecting it.

In *Everett*, the service provider defending federal jurisdiction on appeal aggregated class plaintiffs' unjust-enrichment claims for disgorgement, arguing that their shared interest in the putative constructive trust satisfied the amount-in-controversy requirement. *See Everett*, 460 F.3d at 824. We disagreed, emphasizing *Gilman*'s pre-litigation-interest requirement: "Plaintiffs suing to enforce a 'single title or right' must share their 'common and undivided interest' in vindicating that right before the litigation, not as a result of it." *Id.* at 824 (quoting

*Gilman*, 104 F.3d at 1424, 1430); *see also id.* at 827.[1]  *Everett* built on our unpublished decision in *Durant v. Servicemaster Co.*, 109 F. App'x 27, 29–30 (6th Cir. 2004), which rejected a similar claim-aggregation theory.  Both cases distinguish class funds from a joint interest in a common fund:

> "[The class] 'fund' is created to facilitate the litigation process in virtually every class action, and has nothing necessarily to do with whether the plaintiffs shared a pre-existing (pre-litigation) interest in the subject of the litigation."  *Gilman*, 104 F.3d at 1427.  As in *Durant*, any such fund would only be "a vehicle for administering individual awards, not an indivisible res." 109 F. App'x at 30.

*Everett*, 460 F.3d at 827.

We note the same flaw here.  Siding's successful pursuit of this coverage would garner additional funds for the underlying settlement fund:  a single pool of money to pay class members' individual claims against the underlying defendant.[2]  The thousands of junk faxes sent by Beachwood served as the pre-litigation source of their claims.  "Each [victim] had the option, had he or she wished, to sue the [alleged wrongdoer] individually for the [misconduct]—a legal reality that precludes jurisdiction today no less than it did 100 years ago." *Everett*, 460 F.3d at 825 (citing *Gibson v. Shufeldt*, 122 U.S. 27, 30 (1887)); *cf. Troy Bank of Troy, Ind., v. G.A. Whitehead & Co.*, 222 U.S. 39, 41 (1911) (allowing aggregation of plaintiffs' joint interests in enforcing a vendor's lien, explaining that "neither can enforce [it] in the absence of the other").

Acuity counters with dicta from *Everett* that identifies "an insurance policy" as one of the "paradigm 'common fund' cases."  460 F.3d at 824 (quotation omitted).  Variations of this

---

[1]Or, as the Ninth Circuit put it, "the character of the interest asserted depends on the *source* of plaintiffs' claims.  If the claims are derived from rights that they hold in *group status*, then the claims are common and undivided. If not, the claims are separate and distinct." *Eagle v. Am. Tel. & Tel. Co.*, 769 F.2d 541, 546 (9th Cir. 1985) (emphases added). *Eagle* allowed claim aggregation in a shareholders' derivative suit, explaining that, under California law, "the shareholders' claim for the wrongful depletion of corporate assets is the common and undivided interest each shareholder has in a corporation's assets and a right to share in dividends." *Id.*

[2]The settlement judgment ordered as follows: (1) entry of judgment against Beachwood in the amount of $3,956,650; (2) Acuity's payment of $1,956,650 to an initial settlement fund; (3) that "[t]he remaining portion of the Judgment shall be subject of a separate Coverage Action and if there is any further recovery on the Judgment, then such recovery shall be satisfied only through the proceeds of [Beachwood's] insurance policy(ies) with Acuity;" and (4) that class members submitting "timely and valid claim[s]" would receive "a pro rata share, not to exceed $500 per fax sent, of the Initial Settlement Fund," with a "second opportunity to submit claims" in the event of "further recovery," but "[i]n no event w[ould] a Class member be paid more from the Judgment than $500 per fax that was sent to them." (R. 21-1, Underlying Settlement Judgment ¶¶ G, I.)

statement, first authored in *Bishop v. General Motors Corp.*, 925 F. Supp. 294, 298 (D.N.J. 1996), appear in numerous later cases, including *Gilman* and *Durant*. But none of these cases resolved a claim-aggregation argument under an insurance policy. Further, *Everett* concerned an insurance policy "which [multiple plaintiffs] claim as common owners or in which they share a common interest arising *under a single title or right*," *Everett*, 460 F.3d at 824 (quoting *Gilman*, 104 F.3d at 1424)), bringing to mind a jointly purchased insurance policy. The underlying class members here lack such an ownership interest, and numerous authorities demonstrate that multiple claims against a single instrument, alone, does not qualify for claim aggregation. *See Motorists Mut. Ins. Co. v. Simpson*, 404 F.2d 511, 513 (7th Cir. 1968) (rejecting insurer's attempt, following a fatal car accident, to aggregate widow's and car owner's insurance claims, reasoning that "[t]he potential liability of [the insurer] to the two . . . is several, not joint," and finding "immaterial" the fact that both claims arose under the same insurance policy); *cf. Thomson v. Gaskill*, 315 U.S. 442, 447 (1942) ("Aggregation of plaintiffs' claim cannot be made merely because the claims are derived from a single instrument or because the plaintiffs have a community of interest." (internal citation omitted)); 14AA Charles Alan Wright et al., Federal Practice and Procedure § 3704 (4th ed. West 2014) ("Even when the claims arose from a single instrument or the parties had a community of interest in the subject matter of the suit . . . the cases were quite clear and virtually unanimous that separate and distinct claims by different plaintiffs still could not be aggregated for purposes of measuring the amount in controversy.").

We acknowledge that some cases permit claim-aggregation under a single insurance policy. *See Phoenix Ins. Co. v. Woosley*, 287 F.2d 531, 532–33 (10th Cir. 1961) (aggregating suppliers' lost-merchandise claims with grocer's claims under grocer's fire insurance policies); *Mfrs. Cas. Ins. Co. v. Coker*, 219 F.2d 631, 633 (4th Cir. 1955) (permitting aggregation of school children's injuries, following a bus accident, in insurer's declaratory-judgment action against the school administrator and school children). *Phoenix* rested its conclusion on the suppliers' "common interest in the collection of [the grocer's] insurance, although not an equal interest, for . . . it was the source from which they might collect the money that was due them." 287 F.2d at 533. *Coker*, on the other hand, primarily relied on a treatise, which stated (i) that plaintiffs' "common or undivided interest against the defendant . . . may be separable as among the plaintiffs," and (ii) that "[i]t is not necessary that the claims of plaintiffs be joint, in the technical

legal sense . . . , as opposed to several." *Coker*, 219 F.2d at 633–34 (citation omitted). Neither case persuades, however, in view of *Everett*'s emphasis (borrowed from *Gilman* and shared with *Travelers*) that claim-aggregation requires a "pre-existing (pre-litigation) interest in the subject of the litigation," instead of "a single pool of money that will be allocated among the plaintiffs." *Everett*, 460 F.3d at 827; *see also id.* at 824; *Gilman*, 104 F.3d at 1427; *Travelers*, 689 F.3d at 722.

Applying that standard, Siding fails to show a common and undivided prelitigation interest in Beachwood's policy justifying the aggregation of class members' claims.

II.

Alternatively, Siding asks us to consider the coverage dispute from Acuity's perspective; the insurer, everyone recognizes, has $2 million in coverage at stake. This argument wades into "a different jurisdictional morass" that divides our sister circuits: whether courts may assess the jurisdictional amount in controversy from the perspective of either party (an "either viewpoint rule"), or only from the plaintiff's perspective. *See Olden v. LaFarge Corp.*, 383 F.3d 495, 502 n.1 (6th Cir. 2004) (detailing the circuit split). So far, we have sidestepped this sedgy terrain. *Id.*; *see also Northup Props., Inc. v. Chesapeake Appalachia, L.L.C.*, 567 F.3d 767, 770 n.1 (6th Cir. 2009); *Everett*, 460 F.3d at 829; *cf. Cleveland Hous. Renewal Project v. Deutsche Bank Trust Co.*, 621 F.3d 554, 560–61 (6th Cir. 2010) (allowing defendant's estimate of the costs of complying with an injunction, where plaintiff offered no alternative valuation and the property improvements likely exceeded $75,000). Though declining to resolve the larger question of whether the "either viewpoint rule" ever bears on amount-in-controversy disputes, we reject its application here because it would provide an end run around the longstanding anti-aggregation principles discussed above.

The Ninth Circuit—recognized in *Olden* as an either-viewpoint jurisdiction—emphasized this point in *In re: Ford Motor Co./Citibank*, "specifically declin[ing] to extend the 'either viewpoint rule' to class action suits." 264 F.3d 952, 958 (9th Cir. 2001) (recognizing the "inherent conflict between the 'either viewpoint' rule and the non-aggregation rule when calculating the amount in controversy in class action suits"). Looking to cases where class

plaintiffs predicated jurisdiction on a request for injunctive relief—and more specifically, the cost to defendant of complying with the injunction—the court resolved that plaintiffs cannot "dodge the non-aggregation rule by praying for an injunction." *See id.* at 959.

Still, Siding insists that precedent requires consideration of the "value of the object of the litigation." *See Freeland v. Liberty Mut. Fire Ins. Co.*, 632 F.3d 250, 253 (6th Cir. 2011); *Cleveland Hous. Renewal Project*, 621 F.3d at 560. But we fail to see how this maxim for quantifying declaratory judgment actions trumps the venerable rule against aggregating claims. Neither *Freeland* nor *Cleveland Housing Renewal Project* confronted a claim-aggregation issue, and the Supreme Court decision they relied on for this value-gauging principle, *Hunt v. Washington State Apple Advertising Commission*, "found it unnecessary to reach" the claim-aggregation issue because individual plaintiffs likely met the amount-in-controversy requirement. 432 U.S. 333, 346–48 (1977).

*Travelers* reveals yet another reason for rejecting Siding's "either viewpoint" argument: there, the insurance company *was the plaintiff.* The court deemed that alignment irrelevant because "[t]he anti-aggregation rule applies both to cases in which multiple plaintiffs seek to combine their claims against a single defendant *and to those brought by a single plaintiff against multiple defendants.*" *Travelers*, 689 F.3d at 717 (emphasis added, internal citation omitted). In other words, the bar extends to both sides of the "v." Though relatively undeveloped in this circuit, we long ago recognized the defendant-aggregation aspect of the doctrine as the "settled general rule." *Fechheimer Bros. Co. v. Barnwasser*, 146 F.2d 974, 977 (6th Cir. 1945) (citing *Sovereign Camp, W.O.W. v. O'Neill*, 266 U.S. 292, 295 (1924)); *see also* Federal Practice and Procedure § 3704 ("The same [claim aggregation] principles also applied when suit was brought . . . against multiple defendants."). Neither party acknowledges this obstacle.

Because Siding fails to establish an exception to the rule against claim aggregation, its amount-in-controversy showing falls short of the diversity-jurisdiction threshold. 28 U.S.C. § 1332(a).

### III.

Finding diversity jurisdiction wanting, we consider Acuity's alternative: that the district court "retained continuing . . . jurisdiction" of this coverage dispute by virtue of the underlying settlement judgment. True, language in the settlement judgment attempts to do just that. Shortly after identifying the parties' agreement to litigate this insurance dispute in a "separate Coverage Action," the settlement judgment purports to "retain[] jurisdiction over this case for purposes of implementing" the settlement judgment. (R. 21-1, Underlying Settlement Judgment ¶ G.) Another provision "expressly retains continuing exclusive jurisdiction as to . . . the final judgment . . . and any future recovery for the class against Acuity." (*Id.* ¶ N.) Yet, inasmuch as the underlying TCPA class action lacked the insurance claims now at bar, the settlement order could not *retain* jurisdiction of these coverage issues in the ordinary sense of the word. *See* Webster's II New College Dictionary 946 (2001) (defining "retain" as "keep[ing] or hold[ing] in one's possession"). So, accepting Acuity's reading of the settlement judgment, it appears that the district court (with the parties' consent) assigned itself jurisdiction of an independent action. This the court could not do.

First, as the Supreme Court has often reminded, federal courts "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted); *see also Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005); *Sheldon v. Sill*, 49 U.S. (8 How.) 441, 449 (1850). Necessarily, then, the parties enjoy no more discretion to expand our bailiwicks than we do. *See, e.g., Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 377 n.21 (1978); *Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 17–18 (1951); *People's Bank v. Calhoun*, 102 U.S. 256, 260–61 (1880).

> To permit a federal trial court to enter a judgment in a case . . . where the federal court could not have original jurisdiction of the suit even in the posture it had at the time of judgment, would by the act of the parties work a wrongful extension of federal jurisdiction and give district courts power the Congress has denied them.

*Am. Fire & Cas. Co.*, 341 U.S. at 18; *Baze v. Parker*, 632 F.3d 338, 341 (6th Cir. 2011). In light of this teaching, the parties' consent to jurisdiction matters not.

Second, the substantive differences between the underlying litigation and this insurance dispute—as well as the final judgment in the class suit—remove this case from the ambit of ancillary jurisdiction. Ancillary jurisdiction lies in two circumstances: "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Peacock v. Thomas*, 516 U.S. 349, 354 (1996) (quotation omitted). Acuity focuses on the second rationale, arguing that the district court assumed jurisdiction to enforce its settlement judgment.[3] But, in the absence of a claim that a party violated a settlement term, we struggle to see how this action constitutes *enforcement* of the settlement.

As noted above, the underlying TCPA action involved no insurance claims. The district court made that point clear when it denied Acuity's motion to intervene in the underlying action:

> The subject matter of the underlying action, alleged violations of the TCPA, has nothing to do with Acuity's interest. Acuity's interest is simply "the amount it will have to pay" Beachwood if the Plaintiffs win. Accordingly, Acuity lacks a direct interest in the lawsuit between the Plaintiffs and [Beachwood].
>
> Moreover, Acuity's interest is entirely contingent on future events: the Plaintiffs' success in their claims against Beachwood and a determination of Acuity's duties under the insurance contract. Essentially, Acuity attempts to shoehorn its potential declaratory judgment contract claim into this TCPA class action. But whether [Acuity] has any duty to Beachwood under their insurance contract is wholly a matter of state contract law and bears no relation to the underlying lawsuit.

*Siding I*, No. 11-CV-1074, R. 49 Op. & Order at 3 (citations omitted). Not surprisingly, the settlement judgment identifies this insurance lawsuit as a "separate Coverage Action," and makes no determination of Acuity's liability under Beachwood's policy.

---

[3]Given that this coverage dispute relies on the undisputed facts underpinning the TCPA class action—Beachwood's inadvertent dissemination of junk faxes via a dishonest fax broadcaster—one might expect the parties to press the interdependent-facts avenue to ancillary jurisdiction. But that sort of ancillary jurisdiction—rooted in prudential concerns of convenience and judicial economy—"vanishe[s]" the moment the "judgment was entered in the original [action]." *Peacock*, 516 U.S. at 355 (citing *Owen Equip. & Erection Co.*, 437 U.S. at 377). Consequently, the December 2012 settlement judgment in the TCPA action extinguished the district court's ability to hear claims asserting interdependent facts.

In view of the settlement judgment's silence on Acuity's liability under its insurance policies, we reject Acuity's characterization of this suit as an enforcement action. Although the Supreme Court recognizes "a broad range of supplementary proceedings involving third parties to assist in the protection and enforcement of federal judgments—including attachment, mandamus, garnishment, and the prejudgment avoidance of fraudulent conveyances," the Court "ha[s] never authorized the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment." *Peacock*, 516 U.S. at 356–57 (rejecting a judgment creditor's attempt to bring a veil-piercing claim against the officer-shareholder of an uncollectable corporation as ancillary to the underlying ERISA judgment). Rather, the Court explicitly cautions against extending ancillary jurisdiction to "entirely new theories of liability." *Id.* at 358; *see also Dugas v. Am. Surety Co.*, 300 U.S. 414, 428 (1937) (explaining that ancillary jurisdiction does not reach supplemental claims requesting "relief . . . of a different kind or a different principle"). We heed that warning here, where the underlying TCPA claim has no bearing on Acuity's insurance liability. *See, e.g.*, *Hudson v. Coleman*, 347 F.3d 138, 143 (6th Cir. 2003) (denying ancillary jurisdiction to a garnishment claim seeking to impose liability on a third party under an indemnity agreement, which had nothing to do with the theft claims at issue in the case).

Siding fails to establish an independent basis for federal jurisdiction over this coverage dispute, and ancillary jurisdiction cannot fill the gap.

IV.

With this judgment we adhere to the fundamental principle that federal courts "are courts of limited jurisdiction . . . possess[ing] only that power authorized by Constitution and statute." *Exxon Mobil Corp.*, 545 U.S. at 552 (internal quotation marks omitted). Because "[j]urisdiction is power to declare the law," its absence constrains us to "announcing the fact and dismissing the cause." *Steel Co.*, 523 U.S. at 94 (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)). We therefore VACATE the district court's judgment and REMAND so that it may dismiss this action.