**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 15a0377n.06

Case No. 14-3373

**FILED**
May 27, 2015
DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| CINDA KEENER; RYAN CHIZMADIA; KATHERINE MANFULL, | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SUSAN KELLEY, | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NATIONAL NURSES ORGANIZING COMMITTEE, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE: SILER, ROGERS, and COOK, Circuit Judges.

COOK, Circuit Judge. Plaintiffs Cinda Keener, Ryan Chizmadia, and Katherine Manfull,[1] registered nurses who work for Affinity Medical Center ("Affinity") in Massillon, Ohio, appeal the district court's dismissal of their fair-representation claims against their union, the National Nurses Organizing Committee (NNOC). We AFFIRM the district court's judgment, as modified.

---

[1]Only three of the four nurses who filed the complaint appeal the district court's judgment, because the fourth no longer works for the medical center.

I.

This dispute arises from a contested union election that occurred during the summer of 2012. Prior to that time, Affinity's nurses lacked union representation. NNOC sought to change that and entered into an "election procedures agreement" with the employer. According to plaintiffs, the agreement assisted NNOC's organizing campaign by granting it access to Affinity's property and nurses' names and addresses. In return for Affinity's assistance, NNOC allegedly promised labor peace and pre-negotiated benefits concessions.

The NLRB conducted the union election at Affinity on August 29, 2012, and the initial returns favored union representation by a 100-96 vote, with seven challenged ballots outstanding. Affinity filed election objections with the NLRB on September 5, charging election misconduct by the NNOC, but the NLRB dismissed the objections and, on October 5, it certified the NNOC as the Affinity nurses' union representative. Affinity refused to recognize or bargain with NNOC, prompting the union to file unfair-labor-practice charges with the NLRB. Throughout the administrative proceedings, nurse Cinda Keener attempted, unsuccessfully, to intervene to lodge charges of a "secret agreement" between NNOC and Affinity.[2]

That November, a confidential NNOC proposal leaked, reflecting that the union "pre-negotiated" a variety of employee benefits with Affinity, including health and dental insurance,

---

[2]The parties' briefs provide additional detail about the administrative proceedings and collateral litigation that go beyond the scope of the pleadings. Because the district court dismissed this case under Federal Rule of Civil Procedure 12(b)(6), we consider only the pleadings and attached exhibits, public records, and defense exhibits referenced in the complaint. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011).

life insurance, and retirement benefits. The nurses contend that this "pre-negotiated agreement" confirms their theory that NNOC exchanged benefit concessions for organizing assistance.[3]

In May 2013, Keener and three other Affinity nurses filed this action in federal court alleging that NNOC breached its duty of fair representation—and thus violated the National Labor Relations Act (NLRA) and the Labor Relations Management Act (LMRA)—by concealing the "pre-negotiated agreement" with Affinity that compromised the union's ability to negotiate on their behalf and potentially affected a variety of employment benefits (i.e., health and dental insurance, life insurance, and retirement benefits). This conduct, according to the nurses, showed that the NNOC violated its duty of fair representation in four ways: (1) concealment of the "pre-negotiated agreement"; (2) divided loyalties; and (3) self-dealing under that agreement; and (4) unlawful bargaining under the LMRA.

The NNOC moved to dismiss for lack of subject matter jurisdiction and failure to state a claim. The court concluded that it had jurisdiction but dismissed the complaint for failure to state a claim, reasoning that the "pre-negotiated agreement" underpinning all of plaintiffs' claims predated NNOC's election as the nurses' union representative—that is, the agreement occurred before the duty of fair representation arose. As an alternative ground for dismissing Keener's

---

[3]The nurses' appellate brief supplements this account, adding details of a "side letter" disclosed by the union as part of its motion-to-dismiss reply brief before the district court. They claim that the side letter "is the secret agreement that [they] refer to as the 'Pre-Negotiated Agreement' in the Complaint," and that it shows that the union agreed to freeze benefit levels at current rates for the duration of the initial collective bargaining agreement. The nurses argue that the district court should have considered the terms of the side letter, but overlook the fact that they have not attempted to amend their complaint to add specific terms from the side letter or new claims arising therefrom.

Because we accept the complaint's allegations concerning the pre-negotiated agreement for the purpose of this appeal, and because the nurses do not seek to amend their pleadings to add new facts or claims about the side letter they now claim *is* the pre-negotiated agreement, we have no occasion to unpack the side letter's terms at this time.

concealment claim, the court found that the NLRA's six-month statute of limitations barred the claim, noting that Keener's administrative filings before the NLRB demonstrated that she knew of a "secret agreement" more than six months before she filed the complaint in May 2013.

All but one of the nurses appeal, challenging only the district court's dismissal of the NLRA claims (counts I–III) and its alternative statute-of-limitations holding.

II.

Because we must police jurisdictional issues of our own accord, *see Siding & Insulation Co. v. Acuity Mut. Ins. Co.*, 754 F.3d 367, 368–69 (6th Cir. 2014), we begin with the jurisdictional issue that NNOC now concedes: whether the district court had jurisdiction to hear plaintiffs' fair-representation claims under the NLRA. Though the NLRB maintains exclusive jurisdiction to hear unfair-labor-practice claims under the NLRA, federal courts have concurrent jurisdiction to hear fair-representation claims under 28 U.S.C. § 1337. *Storey v. Local 327, Int'l Bhd. of Teamsters*, 759 F.2d 517, 522–23 (6th Cir. 1985). We agree with the district court that the nurses allege fair-representation claims; in some form, each of the complaint's four counts contends that the union's "secret agreement" with the employer compromised the union's ability to represent the nurses fairly and impartially. Looking to the NLRA's examples of unions' unfair labor practices, *see* 29 U.S.C. § 158(b), we cannot say that the nurses repackaged unfair-labor-practice claims as fair-representation claims to "circumvent the primary jurisdiction of the NLRB." *See Commc'ns Workers of Am. v. Beck*, 487 U.S. 735, 743 (1988).[4]

---

[4]The NLRA prohibits unions from engaging in the following unfair labor practices: (1) restraining an employee's exercise of union rights, (2) causing an employer to discriminate against an employee, (3) refusing to bargain with an employer, (4) inducing a strike, (5) charging excessive or discriminatory fees, (6) billing an employer for services not performed, and (7) picketing under certain circumstances. 29 U.S.C. § 158(b).

Were that the end of the inquiry, we would agree that the district court properly exercised jurisdiction. We delve further, however, because the district court's merits analysis reveals another jurisdictional flaw: lack of standing. Because this appeal arises from motions attacking the nurses' pleadings, we presume the truth of the nurses' factual allegations and review the pleadings under the plausibility standard set forth in *Twombly* and *Iqbal*. *See, e.g.*, *White v. United States*, 601 F.3d 545, 551–52 (6th Cir. 2010).

### III.

#### A. Divided Loyalties & Self-Dealing Claims (Counts II & III)

The district court dismissed the nurses' divided loyalties and self-dealing claims for their reliance on misconduct that predated the onset of the union's duty of fair representation. The nurses do not contest the district court's inception theory, which links the duty of fair representation to the union's election as employees' bargaining representative, and the nurses direct us to no authority supporting the existence of an earlier, proto-duty. *See Storey*, 759 F.2d at 523 (explaining that the duty of fair representation "flows from the union's statutory position as exclusive representative"). Instead, the nurses argue that the district court neglected the allegations of ongoing conduct supporting these claims. Citing paragraphs 28, 32, and 40 of the complaint, as well as its "forward looking" request for declaratory and injunctive relief, the nurses contend that their complaint "alleges that NNOC is continually breaching its duty to loyally represent Affinity nurses." Not only do the pleadings belie this claim, they suffer from a more fundamental flaw.

As the district court correctly observed, Counts II and III target past conduct that occurred before the union became the nurses' bargaining representative: the union entered a "pre-negotiated agreement." The allegations supporting these counts all refer back to that

original sin, without citing any later misconduct by the union. (*See* R. 1, Compl. ¶¶ 32 ("NNOC is breaching its duty of loyalty to Plaintiffs and their co-workers because it *granted* Affinity contractual control over what NNOC could seek for the nurses in collective bargaining with Affinity . . . . NNOC is *thereby* acting in bad faith and violating its duty of fair representation." (emphasis added)); 34 ("NNOC *engaged* in self-dealing by pre-negotiating health, dental, life insurance, retirement, substance abuse and potentially other bargaining concessions at the expense of Plaintiffs and their co-workers in exchange . . . for Affinity and/or CHS's agreement to assist NNOC with unionizing its registered nurses. NNOC thereby *acted* in bad faith and *violated* its duty of fair representation." (emphases added)).) Paragraphs 28 and 40, though generally alleging that NNOC "continues" and "will continue" to breach its duty of fair representation as detailed in Counts I–IV, adds nothing to the factual allegations of Counts II and III that encompasses the union's post-certification conduct. Contrary to the nurses' argument, their complaint contains no allegations that the union acted, to their detriment, in conformity with the "pre-negotiation agreement" after it became their bargaining representative. *Cf. Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). The nurses have not sought to amend their pleadings to include such allegations.

Though the district court construed this pleading deficiency as a merits issue, we perceive a lack of standing. "[A] plaintiff must demonstrate standing separately for each form of relief sought," *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000), which requires allegations plausibly demonstrating a concrete or imminent injury, causation, and redressability, *e.g.*, *White*, 601 F.3d at 551–52 (citing *Lujan v. Defenders of*

*Wildlife*, 504 U.S. 555, 560–61 (1992)).  Here, the nurses' complaint fails to identify an injury. The fair-representation cases they cite demonstrate why.

In *Farmer v. ARA Services Inc.*, we affirmed the district court's judgment that the union breached the duty of fair representation by (i) refusing to arbitrate employee grievances under the collective bargaining agreement, and (ii) negotiating and entering into collective bargaining agreements with sexually discriminatory terms contrary to those presented to the membership. 660 F.2d 1096, 1103–04 (6th Cir. 1981).  Thus, the union's secretive conduct manifested in contract terms contrary to its members' wishes.  *Id.* ("[A] majority of the union's membership voted in favor of contractual demands which were precisely the reverse of those negotiated on three successive occasions.").

In *Aguinaga v. United Food & Commercial Workers International Union*, the Tenth Circuit sustained the jury's verdict that the union breached its duty of fair representation by secretly releasing the employees' claims against the employer for breach of the collective bargaining agreement.  993 F.2d 1463, 1470 (10th Cir. 1993) ("[T]he evidence shows that, in August 1982, the Union knew of [the employer's] plan to reopen the [facility] as a nonunion plant [in violation of the collective bargaining agreement]. . . .  [T]he Union took no steps to remedy the breach.  Instead, the Union entered into the two side letters with [the employer] releasing all rights and claims Plaintiffs would have had against [the employer] . . . .  The Union then deceived Plaintiffs by concealing the side letters.").  The union's collusive behavior enabled the employer to lay off employees at the affected plant, and the district court awarded backpay. *See id.* at 1473–74 (remanding to the district court's damages determination for consideration of additional evidence).

Similarly, in *Lewis v. Tuscan Dairy Farms, Inc.*, the Second Circuit affirmed a jury's finding of a fair representation breach, where the union president negotiated the merger of milk-processing plants without honoring the collective bargaining agreement's seniority requirements or informing the affected employees, and then refused to submit a member's related grievance to arbitration. 25 F.3d 1138, 1142–44 (2d Cir. 1994). The non-conforming merger displaced 110 employees. *Id.* at 1141.

In each of these cases, the union's actions resulted in a concrete injury, such as layoffs or decreased benefits, and its secretive dealings demonstrated the union's bad faith. But here, the nurses allege that a pre-negotiated agreement, entered before the union became their representative, *will* adversely affect their benefits at some point. In the absence of allegations that the union actually acted pursuant to the pre-negotiated agreement to their detriment, the nurses' complaint becomes a request for an advisory opinion telling the union not to follow the pre-negotiated agreement—or worse, a request for the courts to supervise the union's negotiation practices. We do not read the Supreme Court's precedents applying the duty of fair representation to unions' negotiating activities to reach so far. *See Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 78 (1991) ("Congress did not intend judicial review of a union's performance to permit the court to substitute its own view of the proper bargain for that reached by the union. Rather, Congress envisioned the relationship between the courts and labor unions as similar to that between the courts and the legislature. Any substantive examination of a union's performance, therefore, must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities."). And, while the nurses correctly note that a fair-representation claim does not require a breach of contract, *see*

*Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*, 493 U.S. 67, 80 (1989), that does not excuse the jurisdictional requirement of pleading a redressable injury.

When seeking relief for a future injury, as the nurses do here, plaintiffs must plead an injury that is "imminent, not conjectural or hypothetical" in order to have standing. *Lujan*, 504 U.S. at 560. The nurses' complaint pleads only a conjectural future injury. The complaint identifies the pre-negotiated agreement as posing "a direct and significant threat to [the nurses'] . . . pecuniary and other interests in their health, dental, life insurance, retirement, and potentially other benefits[,] and legal interest in having a union representative with a single-minded loyalty to their interests and that is not under the control of their employer." The complaint, however, does not identify any particular future actions by the union that could prejudice these interests, and states that Affinity "refuses to recognize or bargain with" the union and is engaging in litigation contesting the recognition of the union.[5] When negotiations have yet to begin and it is possible that the union defendant will not be conducting those negotiations, harm resulting from the union's likely position in those negotiations is too conjectural to confer standing. *Peterson v. Transport Workers Union of America, AFL-CIO*, 2014 WL 6755666 at *4 (D.D.C. Dec. 1, 2014). Moreover, in an analogous ripeness inquiry, the Ninth Circuit ruled that an injury is "speculative" when it is uncertain that a union's position, challenged by the plaintiffs, will be agreed in negotiations and approved by the union membership. *Addington v. U.S. Airline Pilots Ass'n*, 606 F.3d 1174, 1179–80 (9th Cir. 2010). Because the nurses' complaint only alleges that the union is likely to follow the pre-negotiated agreement if it engages in collective bargaining,

---

[5] If the NNOC and Affinity have begun bargaining since the time of the complaint, the nurses should present these facts to the district court in an amended complaint.

but does not identify any reasonably certain—or even likely—disloyal act by the union, it fails to allege an imminent injury.

Because the nurses' complaint fails to allege either a present or an imminent injury, the divided loyalties and self-dealing claims must be dismissed for lack of standing. *See, e.g.*, *White*, 601 F.3d at 551–52. Such a jurisdictional dismissal, unlike the district court's dismissal under Rule 12(b)(6), "does not operate as an adjudication on the merits for preclusive purposes." *Holloway v. Brush*, 220 F.3d 767, 778 (6th Cir. 2000) (internal quotation marks omitted). We therefore affirm the district court's dismissal, as modified. *See Allstate Ins. Co. v. Global Med. Billing, Inc.*, 520 F. App'x 409, 410–11 (6th Cir. 2013) (explaining that a standing argument "is more properly considered an attack on the court's subject-matter jurisdiction under Rule 12(b)(1)" than a failure to state a claim under Rule 12(b)(6)).

### B. Concealment Claim (Count I)

That brings us to the concealment claim. Unlike Counts II and III, the concealment claim entails ongoing (i.e., post-certification) conduct in violation of the union's duty of fair representation. Paragraph 30 of the complaint avers that "NNOC *is acting* in bad faith and *violating* its duty of fair representation by *concealing* from Plaintiffs and their co-workers a Pre-Negotiated Agreement with Affinity . . . that controls or will control the nurses' health, dental, life insurance, retirement, substance abuse and potentially other benefits." (R. 1, Compl. ¶ 30 (emphasis added).) The complaint further states that information regarding NNOC's pre-negotiation of employee benefits leaked in November 2012, demonstrating that the union's alleged concealment of its arrangement with the employer continued after the NLRB certified the union as the nurses' exclusive bargaining representative in October 2012. Nevertheless, the

concealment claim suffers from the same standing problem that dooms the other claims: lack of injury. The complaint fails to identify any harm to the nurses that the union's concealment has caused. The nurses do not allege, for instance, that they would have (or even could have) done anything differently had the NNOC disclosed the agreement after the NLRB certified it as the nurses' representative. Without identifying an injury arising from the concealment, the nurses lack standing to contest it.

Tellingly, the nurses' requested remedies suggest no injury traceable to the *concealment* of the agreement in particular. In the context of this case, the proper remedy for concealment of the pre-negotiated agreement would be redress for any injuries caused by the concealment. But the nurses' remedies bear no relation to their continued ignorance of the alleged agreement after the union became their representative. Instead, the nurses' complaint attacks the *terms* of the pre-negotiation agreement itself, seeking a judgment voiding the agreement and enjoining the union from abiding by its terms. The nurses fail to explain how those remedies address a potential injury caused by the union's concealment of the agreement. Similarly, the complaint's remaining remedies—a request for damages "that Plaintiffs have suffered or will suffer" as a result of the agreement, nominal damages, and other "just and proper" relief—bear no relation to an injury caused by concealment.

In the absence of allegations showing that the union's concealment of the pre-negotiated agreement injured the nurses, and that a favorable decision by this court will remedy that harm, this claim must also be dismissed for lack of standing.[6]

---

[6]Because the nurses' claims must be dismissed for lack of standing, we do not reach the district court's alternative statute-of-limitations holding.

IV.

For these reasons, we AFFIRM the district court's judgment, as modified, reflecting that the complaint is dismissed for lack of jurisdiction.

ROGERS, J., concurring in the judgment. In my view, the nurses have Article III standing to challenge both the validity of the pre-negotiated agreement between NNOC and Affinity and NNOC's alleged concealment of the agreement's contents. If, for instance, Congress had legislated a judicial remedy for such a practice, such a statute would not violate Article III. However, I concur in the judgment because the district court properly determined that the nurses have failed to adequately plead a breach of the duty of fair representation under the statute at issue.

The nurses have standing to challenge the pre-negotiated agreement between NNOC and Affinity. To have standing, the nurses must allege an "actual or imminent" injury that is caused by the defendant and that will likely be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A future injury may be sufficiently imminent if "there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014). The nurses face an injury—harm to their terms of employment as settled by collective bargaining—that would be caused by NNOC's agreement and would likely be redressed by the agreement's nullification. The nurses allege that the agreement covers terms of employment that are subject to collective bargaining, and thus restricts NNOC's ability to obtain the best possible terms of employment for the nurses. NNOC's alleged inability to bargain freely will likely harm the nurses' terms of employment once collective bargaining begins. Because NNOC has been certified as the nurses' union, there is a substantial likelihood that NNOC will negotiate with Affinity and that in doing so the agreement will lead to a worse outcome for the nurses than NNOC could otherwise have obtained. It is possible that NNOC will ignore the agreement or that Affinity will succeed in its attempt to ignore NNOC, but these possibilities do not render the prospect of a certified union negotiating on behalf of workers in accordance with a

pre-negotiated agreement speculative. The nurses have alleged a sufficiently imminent injury for Article III standing, and it is caused by the NNOC's being subject to the agreement and would be redressed by a court order voiding the agreement. Another way of stating this conclusion is that Congress could, without violating Article III, provide a cause of action to enjoin the validity of such agreements by those who are adversely affected by them.

Though it is sufficient for Article III standing, the possibility of excessively passive negotiation by NNOC in the future is not sufficient for a fair representation claim under the NLRA and LMRA. "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Spies*, 386 U.S. 171, 190 (1967). The existence of an agreement reached prior to certification does not in itself show that NNOC's representation of the nurses is not in "good faith," and the nurses do not allege that NNOC's conduct is discriminatory or arbitrary. The nurses point to no acts or omissions by NNOC after it became the nurses' bargaining representative that demonstrate bad faith, and point to no case finding a breach of the duty of fair representation without any conduct on the union's part. As the majority notes, Congress intended for courts to be "highly deferential" to the outcome of the collective bargaining process. *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 78 (1991). This suggests that NNOC ought to have an opportunity to bargain in good faith—to ignore the agreement while bargaining with Affinity or otherwise bargain for fair terms—before the existence of the agreement can be proof of bad faith. The existence of the agreement might in the future help prove that NNOC's bargaining strategy breached its duty of fair representation, but the agreement itself is not a breach.

The nurses also have Article III standing to contest NNOC's concealment of the substantive terms of the agreement. Plaintiffs have suffered an injury in fact sufficient for standing so long as they "desire certain information that the defendants are allegedly under a legal obligation to provide" and that the defendants have not provided. *Am. Canoe Ass'n, Inc. v. City of Louisa Water & Sewer Comm'n*, 389 F.3d 536, 545 (6th Cir. 2004). While the nurses do not explicitly request that the agreement be disclosed, their concealment claim would, if it were meritorious, require that the agreement be disclosed; they argue that it is a breach of the duty of fair representation for NNOC to conceal the terms of the agreement. Thus the nurses would have Article III standing to seek disclosure if there were a statutory obligation to disclsoe, and they might arguably be interpreted to have requested it under the catch-all "all other relief found to be just and proper" language in their prayer for relief.

However, the nurses have not pled sufficient facts to establish that concealment of the agreement was a breach of the duty of fair representation. To prove bad faith, the nurses must allege "substantial evidence of fraud, deceitful action, or dishonest conduct." *Humphrey v. Moore*, 375 U.S. 335, 348 (1964); *Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1998). Unless the union "has a duty to secure rank-and-file ratification of an agreement," there is "no duty to inform members of the agreement." *White v. White Rose Food*, 237 F.3d 174, 183 (2d Cir. 2001). NNOC thus did not have an independent obligation to disclose the terms of the agreement to the nurses. As the district court noted, the nurses do not allege that, after it was certified as their union, NNOC actively misled the nurses regarding the agreement or harmed them by not disclosing the agreement. Under these circumstances, the nurses' concealment claim does not allege a breach of NNOC's duty of representation.

Because the nurses' appeal fails on the merits, I concur in the judgment.